UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SABRINA H.,[1] <br><br>           Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] <br><br>           Defendant. | Case No. 1:22-cv-485-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff filed a Complaint with the Court seeking judicial review of the Commissioner's denial of her application for supplemental security income and a period of disability and disability insurance benefits. (Dkt. 1.) The matter is fully briefed and at issue. (Dkt. 18, 22, 23.) Having carefully reviewed the parties' memoranda and the entire administrative record ("AR"), the Court will remand the decision of the Commissioner for the reasons set forth below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] Kilolo Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER  - 1**

## BACKGROUND

On April 3, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, claiming disability beginning January 3, 2020. (AR 34.) At the time of the alleged disability onset date, Plaintiff was 39 years of age. (AR 47.)

The application was denied initially and on reconsideration, and a video hearing was conducted on September 21, 2021, before Administrative Law Judge ("ALJ") Wynne O'Brien-Persons. (AR 34.) After considering testimony from Plaintiff and vocational expert (VE) Connie Hill, the ALJ issued a decision on October 5, 2021, finding Plaintiff had not been under a disability from January 3, 2020, through the date of the decision. (AR 48.)[3]

Plaintiff timely requested review by the Appeals Council, which denied her request for review on September 27, 2022. (AR 1-7.) She next timely appealed this final decision to the Court on November 25, 2022. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter…a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court must uphold

---

[3] A previous decision by ALJ O'Brien-Persons, dated January 3, 2020, found Plaintiff had not been under a disability from September 4, 2016, through the date of that decision. (AR 102 – 112.)

**MEMORANDUM DECISION AND ORDER - 2**

the ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

## THE ALJ'S ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step[4]

sequential inquiry to determine whether a claimant is disabled within the meaning of the

Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th

Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined that Plaintiff had not engaged in substantial

gainful activity since January 3, 2020. (AR 38.) At step two, the ALJ found Plaintiff had

the following medically determinable, severe impairments: "fibromyalgia; lupus;

migraines; epilepsy; major depressive disorder; and posttraumatic stress disorder

(PTSD)." (AR 38.)

At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments which met or were medically equal to Listings 14.02

(Systemic lupus erythematosus) and 11.02 (Epilepsy). (AR 38 - 39.) The ALJ determined

also that Plaintiff's fibromyalgia did not meet the criteria of listing section 1.00, which

pertains to musculoskeletal impairments, and that her fibromyalgia and headaches did not

meet the criteria of listing section 11.00, which pertains to neurological disorders. (AR

39.) Finally, the ALJ determined that the severity of Plaintiff's mental impairments,

---

[4] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v)."

considered singly and in combination, did not meet or medically equal the criteria of

Listings 12.04 and 12.15. (AR 18.)

At step four, the ALJ concluded Plaintiff retained the residual functional capacity

(RFC) to perform light work,[5] as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),

except for the following additional limitations:

> [T]he claimant is never able to climb ladders, ropes, or
> scaffolds, is occasionally able to balance, stoop, kneel,
> crouch, and crawl, is frequently able to handle and finger
> bilaterally, is frequently able to tolerate exposure to extreme
> cold and to sunlight, and must avoid all exposure to hazards.
> The claimant is limited to simple, routine tasks, is able to
> tolerate occasional interaction with supervisors, coworkers,
> and members of the public, and is able to tolerate occasional
> changes in the work setting.

(AR 40.)

The ALJ found that, because of Plaintiff's limitations, her ability to perform all or

substantially all of the requirements of light work was impeded by additional limitations.

---

[5] The Dictionary of Occupational Titles defines light work as follows:

> Light Work - Exerting up to 20 pounds of force occasionally, and/or up
> to 10 pounds of force frequently, and/or a negligible amount of force
> constantly (Constantly: activity or condition exists 2/3 or more of the
> time) to move objects. Physical demand requirements are in excess of
> those for Sedentary Work. Even though the weight lifted may be only a
> negligible amount, a job should be rated Light Work: (1) when it requires
> walking or standing to a significant degree; or (2) when it requires sitting
> most of the time but entails pushing and/or pulling of arm or leg controls;
> and/or (3) when the job requires working at a production rate pace
> entailing the constant pushing and/or pulling of materials even though
> the weight of those materials is negligible.

Dictionary of Occupational Titles Appendix C - Components of the Definition Trailer, 1991 WL 688702.
Sedentary work involves "sitting most of the time, but may involve walking or standing for brief periods
of time." *Id.*

(AR 48.) Relying upon testimony from the vocational expert, the ALJ determined at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform given her age, education, work experience, and RFC, such as: Inspector/Hand Packager; Garment Sorter; and Laundry Folder. (AR 48.) The ALJ therefore determined that Plaintiff had not been under a disability from January 3, 2020, through the date of the decision. (AR 48.)

## PLAINTIFF'S TESTIMONY

At the September 21, 2021 hearing, Plaintiff provided testimony that her migraine headaches and symptoms following an aneurysm in February of 2021 prevented her from working. Plaintiff told the ALJ that until 2015, she had worked full time, but her employment was terminated for missing too many days of work due to migraines and illness. (AR 85.) She was unable to find alternative employment because of her poor attendance history. (AR 85.)

Plaintiff explained that, since March of 2020, her migraines often occurred three to four times each week, despite treatment with Ajovy, an injection she took monthly. (AR 87.) In a headache questionnaire completed on May 23, 2020, Plaintiff indicated that her migraines caused pain, nausea, and vomiting. (AR 398.) She relieved her symptoms by laying down in a quiet, dark, cool room. *Id.* In February of 2021, Plaintiff suffered a grand mal seizure and was hospitalized for two weeks, with a diagnosis of a ruptured cerebral aneurysm that was able to be repaired. (AR 87 – 88.)[6] Following her discharge

---

[6] Plaintiff had a consistent headache for at least 6 days prior to her hospital admission on February 7, 2021, and she presented to the emergency department after suffering a grand mal seizure. (AR 851.) Her

**MEMORANDUM DECISION AND ORDER  - 6**

from the hospital, she had a shunt placed, because fluid was not draining properly. (AR 88.)[7]

Plaintiff next described her functional limitations following her hospitalization in February of 2021. She testified that she struggled with balance and walking. (AR 88.) She described how she often repeated herself, forgetting things she had said just minutes before. (AR 88 – 89.) She often forgot that the stove was on, and relayed instances where food on the stove caught fire. (AR 89.) Grocery shopping was more difficult, because of fatigue and forgetfulness. (AR 90.) For example, she explained that she relied on her oldest daughter to help her with making a list and making sure she purchased the items on the list, because she would forget why items were on the list in the first place. (AR 90.)

She also described an ongoing feeling of pressure in her head, which caused headaches that could be relieved by laying her head back to lessen the pressure. (AR 89.) She explained that it was difficult to remain vertical for longer than two hours because of the feeling of pressure in her head, describing it like a feeling of "stuffiness in your ears. I can't hear anybody talking to me." (AR 90 – 91.) She testified that her physician was addressing this symptom by "lowering the drain" via a shunt in her skull to alleviate that feeling, but that she was told it "probably won't get any better." (AR 91.)

The ALJ turned next to the vocational expert. The ALJ asked the vocational expert which occupations would be available with the RFC set forth above. (AR 93.) The

---

admission CT revealed extensive subarachnoid hemorrhage with IVH and hydrocephalus. (AR 851.) She was treated with a left frontotemporal craniotomy with clipping of the aneurysm. (AR 861.)

[7] On May 12, 2021, Plaintiff underwent a procedure to insert a ventriculoperitoneal shunt. (AR 1126.)

vocational expert identified the jobs of Inspector and Hand Packager; Garment Sorter; and Laundry Folder, all of which fall within the category of light work. (AR 93 – 94.) When the ALJ asked how the vocational expert's testimony would change if an individual would consistently be off task greater than 10% of the workday, the vocational expert explained that there would be no work available. (AR 95.)

Plaintiff's counsel then had an opportunity to question the vocational expert. Counsel asked the vocational expert to assume an individual who would need break time during the day to lie down fully during an additional 15 – 20 minute break each morning and afternoon. With that limitation, the vocational expert testified all work would be precluded. (AR 95.) The vocational expert confirmed also that an individual who was absent two days each month on a consistent basis would be precluded from all work. (AR 96.)

## DISCUSSION

Plaintiff contests the ALJ's hypothetical and resulting RFC by challenging the ALJ's finding that Plaintiff's testimony concerning the severity and intensity of her symptoms was inconsistent with the evidence in the record. She therefore contends the RFC was not supported by substantial evidence, because it did not account for all of her limitations, which included time off task, the need for additional breaks, and her cognitive impairment.

Plaintiff focuses on her hearing testimony about her headaches and post-surgical treatment following her hospitalization for a ruptured aneurysm in February of 2021. Pl.'s Brief at 11. (Dkt. 18.) She argues the ALJ: (1) recited the medical evidence without

explaining how that evidence was inconsistent with Plaintiff's statements about the limitations from her headaches and post-aneurysm recovery; (2) did not consider her testimony related to the effects of her aneurysm, which included cognitive impairments; headaches; and the need to lay down after two hours of standing; and, (3) erroneously concluded that Plaintiff's condition following her aneurysm improved.

Defendant contends that the ALJ reasonably discounted Plaintiff's subjective complaints as inconsistent with the evidence. Defendant points out that the ALJ contrasted Plaintiff's subjective complaints with objective medical evidence demonstrating Plaintiff was more functional than she alleged; noted her improvement with treatment and the limited approach to treatment; and, explained how Plaintiff's subjective complaints were inconsistent with her reported activities. Def.'s Brief at 3 – 8. (Dkt. 22.)

In reply, Plaintiff again emphasizes that the evidence the ALJ discussed did not focus on the impact of Plaintiff's headaches, aneurysm, and post-surgical recovery in terms of Plaintiff's ability to persist and maintain full-time employment. She also contends the ALJ misapplied the two-part test for evaluating subjective symptom testimony, arguing the ALJ looked to objective medical evidence to discredit her. Pl. Reply at 3. (Dkt. 23.)

A.    *Legal Standard*

Where, as here, the ALJ "determines that a plaintiff for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the

ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015)). *See also Smartt v. Kijakazi*, 53, F.4th 489, 494 (9th Cir. 2022) (articulating the clear and convincing standard). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and…explain what evidence undermines that testimony.'" *Id.* (alterations in original) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)).

When fashioning the RFC, the hypothetical an ALJ poses to a vocational expert, which derives from the RFC, "must set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Thus, an RFC that fails to take into account a claimant's limitations is defective. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

**B.    *Analysis***

Although the ALJ discussed the medical record at length, the Court is not clear how any of the medical evidence was inconsistent with Plaintiff's statements concerning her headaches and post-aneurysm recovery. (AR 41 – 46.) The ALJ began the analysis by stating that the medical evidence did not support Plaintiff's allegations of "extreme fatigue, disorganized speech, shaking of her hands, inability to get out of bed on bad days, severe balance difficulties interfering with getting dressed or showering, hand pain so severe that it wakes her up at night, or significant pain in her back or tailbone interfering with sitting or postural activity." (AR 42.) The ALJ next continued, for three

paragraphs, explaining how she arrived at her conclusions with references to the medical evidence, but without any citation to specific records. (AR 42 – 43.) Following this narrative was a lengthy summary of Plaintiff's treatment history. (AR 43 – 46.) The Court is left without any meaningful basis to review the ALJ's reasoning. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (ALJ must link the testimony to particular parts of the medical record supporting her non-credibility determination, and make specific findings linking a lack of medical records to the claimant's testimony about the intensity of her pain).

Rather, the ALJ refuted Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms because Plaintiff failed to report experiencing bad days, extreme fatigue, forgetfulness, or memory problems to her care providers. (AR 44.)  This is an incorrect application of the two-part test. A claimant "need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Instead, the test requires "only that the causal relationship be a reasonable inference, not a medically proven phenomenon." *Id.*

Here, Plaintiff has shown that she suffers from medically established impairments—fibromyalgia,[8] lupus,[9] migraines,[10] epilepsy,[11] and an aneurysm[12]—all conditions which could reasonably be expected to produce fatigue, pain, headaches, and cognitive impairment. Consequently, the ALJ was required to evaluate factors such as: (1) whether the claimant engages in daily activities inconsistent with the alleged

---

[8] Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id.* at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, FIBROMYALGIA SYNDROME: BLUEPRINT FOR A RELIABLE DIAGNOSIS, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id.*

[9] Lupus is defined as an autoimmune disease characterized by the body's immune system attacking its own tissues and organs. *See*, e.g., *Lupus*, WebMD, https://www.webmd.com/lupus/systemic-lupus-erythematosus (April 26, 2022) [https://perma.cc/H3KC-SBK4]. The resulting inflammation can affect various body systems—including joints, skin, kidneys, blood cells, brain, heart, and lungs. *Id.* As such, symptoms of lupus vary from person to person but commonly include achy joints, fevers, swollen joints, constant and severe fatigue, rashes, hair loss, sensitivity to sun and other lights, seizures, etc. *Id.*

[10] Plaintiff was prescribed Ajovy for treatment of her migraines. (AR 584.) Ajovy is an injectable medication prescribed to reduce migraine frequency. https://www.ajovy.com/how-ajovy-works/ [https://perma.cc/C63B-AFRQ]

[11] Plaintiff was diagnosed with refractory epilepsia partialis continua. (AR 28.) Epilepsia partialis continua (EPC) is a condition that occurs when seizures happen every few seconds or minutes. This can continue for days, weeks or even years. EPC seizures are most common in the hands and face (focal). Symptoms may include twitching of the muscles in the face or hands. *Epilepsia Partialis Continua* (*EPC*), Cedars Sinai, https://www.cedars-sinai.org/health-library/diseases-and-conditions/e/epilepsia-partialis-continua-epc.html [https://perma.cc/HAY6-BK6]. Plaintiff's EPC presents as left hand tremor, which has been largely, but not completely, suppressed with medication. (AR 29.) On December 15, 2021, Plaintiff reported experiencing noticeable FIA seizures at night which were witnessed by her daughter. (AR 29.)

[12] Following admission to the hospital on February 7, 2021, with a diagnosis of subarachnoid hemorrhage with mild hydrocephalus, (AR 854), Plaintiff was diagnosed on February 9, 2021, with a 3 mm aneurysm at the takeoff of the left frontopolar artery at the A2A location. (AR 857, 856.) Surgeons performed a left frontotemporal craniotomy with clipping of the aneurysm. The final diagnosis was subarachnoid hemorrhage with hydrocephalus secondary to a rare ruptured left A1 dissecting pseudoaneurysm. (AR 861, 866, 867, 871.)

**MEMORANDUM DECISION AND ORDER - 12**

symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence—not whether she reported disabling limitations to her care providers. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). *See also* SSR 96-7p (the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms). Accordingly, the Court finds the ALJ's application of the two-part test was in error.

Turning to Plaintiff's migraine frequency, the ALJ discredited Plaintiff on the grounds that she reported "significant improvement" in migraine symptoms "prior to the alleged onset date with initiation of injectable medication, specifically Ajovy." (AR 43.) Later in the written opinion, the ALJ cited a November 27, 2019 treatment record[13] which documented "migraine control has dramatically improved with [the] addition of Ajovy," as support. (AR 584, 44.) Not only was this later record prior to the alleged onset date of January 3, 2020, there was no quantitative statement concerning the level of improvement. On October 29, 2020, Plaintiff reported that Ajovy had "markedly improved her migraine control, down to 1 – 2 migraines per month." (AR 1028.)[14]

---

[13] This is prior to the alleged onset date of January 3, 2020.
[14] This same record also charted Plaintiff reported 3 – 4 focal impaired awareness seizures per month. (AR 1028.)

MEMORANDUM DECISION AND ORDER - 13

Although the ALJ cited to this record, the ALJ omitted the reference to the quantitative level of improvement. (AR 45, citing Ex. C16F/12-14.)

Taken together, these records suggest that, prior to October 29, 2020, Plaintiff's migraines may have exceeded 1 – 2 migraines each month, and improved to 1 – 2 migraines per month. While this record is inconsistent with Plaintiff's testimony at the September 21, 2021 hearing that her migraines often occurred three to four times each week, the migraines were still at a level that the VE testified would have been work preclusive if Plaintiff regularly missed work 1- 2 times each month or was otherwise off-task during the work day to treat her migraine symptoms. *See Fraga-Jimenez v. Saul*, No. 1:18-CV-00430-CWD, 2020 WL 1249877, at *4 (D. Idaho Mar. 16, 2020) (finding the ALJ failed to explain how improvement from daily migraines to one or two each week was inconsistent with expected absenteeism).

The ALJ concluded Plaintiff's headaches essentially resolved following Plaintiff's discharge from the hospital on February 20, 2021. (AR 43, 46.) However, this conclusion omits important context and other symptomology after February 20, 2021. Upon her discharge, Plaintiff's treatment provider charted that her headache symptoms were stable. (AR 888.) But, on that same date, Plaintiff reported that she had headaches since the surgery with symptoms more severe when upright, but which improved when lying down, with associated nausea. (AR 1128.) Plaintiff reported struggling with "low-pressure headaches" resulting in the insertion of a ventriculoperitoneal shunt. (AR 46,

1123, 1126.)[15] Despite the shunt placement, she still reported headaches, forgetfulness, and memory issues. (AR 1129.)

On March 23, 2021, Plaintiff's treatment provider charted that Plaintiff reported decreased stamina and no headaches. (AR 1115.) On May 27, 2021, Plaintiff reported that she still "struggled with low pressure headaches" and a feeling of her ears being clogged when upright, with improvement of both symptoms upon laying down. (AR 1131.) The plan was to adjust her shunt up further. (AR 1131.) Following this visit, on June 10, 2021, Plaintiff reported that her headaches were better; that she could persist for up to two hours without needing to recline; and, that she needed to recline for less time. (AR 1134.) On July 22, 2021, Plaintiff reported that her headaches had mostly resolved, but that she still felt her ears "get clogged up" when upright, which symptom improved when laying down. (AR 1138.) Her treatment provider elected to leave her shunt at 18. (AR 1139.) On September 2, 2021, Plaintiff reported her headaches had resolved, but she felt her "clogged ear" symptoms had not resolved. (AR 1142.) Her treatment provider charted that he was ready to start dialing her shunt down. (AR 1142.) The plan was to slowly start dialing the shunt down to see if her "clogged ear" feeling improved, or became worse. (AR 1143.) Nonetheless, Plaintiff's treatment provider indicated that "she may ultimately have to choose which symptoms she prefers to live with regarding finding the perfect setting with her shunt." (AR 1143.)

---

[15] Plaintiff's CT scan revealed communicating hydrocephalus. (AR 1123, 1126.)

These records following Plaintiff's discharge on February 20, 2021, indicate improvement in migraine headache symptoms, but replacement with a new symptom Plaintiff described as a "low pressure headache," or a feeling like her ears were clogged. These symptoms were relieved by laying down. The medical records documenting these symptoms were consistent with Plaintiff's testimony at the hearing. (AR 90 – 91.) However, the ALJ did not comment at all concerning this evidence and testimony, or otherwise discredit it in the written decision. In turn, Plaintiff's testimony supports her argument that the RFC failed to incorporate a limitation that she may need to take additional breaks during the workday every two hours, or may otherwise be off-task due to these symptoms.

Turning next to Plaintiff's testimony concerning her cognitive impairments, the ALJ found Plaintiff's statements inconsistent with the medical evidence of record, because she "has sought no mental health treatment." (AR 42.) The ALJ also concluded there was no evidentiary support for Plaintiff's allegations of memory impairment. (AR 42.) First, it is entirely unclear to the Court how mental health treatment would address cognitive impairments related to lupus, fibromyalgia, focal impaired awareness seizures, a ruptured aneurysm, and hydrocephalus. And second, the ALJ has again inverted the test. Once a claimant has produced objective evidence of an impairment that could reasonably be expected to produce cognitive impairment, the ALJ must examine other objective factors. Here, the ALJ did not do so. (*See* AR 42.)

Significantly, the record reflects Plaintiff's consistent complaints of forgetfulness and other cognitive problems following her aneurysm in February of 2021. On May 6,

2021, Plaintiff reported feeling tired, and also that she was forgetful. (AR 1122.) Her treatment provider elected to perform a high-volume lumbar puncture, and charted significant improvement following the procedure. (AR 1122, 1123.) However, on July 22, 2021, Plaintiff again reported forgetfulness. (AR 1138.) On September 2, 2021, Plaintiff reported her memory and "fogginess" had not resolved. (AR 1142.)[16] This evidence is unrefuted in the record, and is consistent with Plaintiff's testimony at the hearing. Other than a limitation to "simple, routine tasks," the ALJ failed to account for Plaintiff's cognitive impairment in the RFC. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (finding that ALJ's limitation to "light, simple work" did not account for impaired cognitive functions such as "attention, concentration, processing-speed, and short-term memory.").

---

[16] There are treatment notes for the period October 5, 2021, to December 15, 2021, which additionally support Plaintiff's complaints concerning cognitive impairment. (AR 2). During this period, Plaintiff was referred for a neuropsychological evaluation "due to cognitive concerns following an SAH/IVH secondary to ruptured A1 dissected pseudoaneurysm and hydrocephalus in February 2021." (AR 16.) Results of objective testing conducted on or about December 16, 2021, revealed severe deficits with attention and working memory that were much worse when fatigued, and which heavily impacted Plaintiff's memory, attention to detail, processing speed, and reasoning skills. (AR 20.) The provider's impression was that Plaintiff had "significant cognitive deficits to the point that the patient is probably unable to work consistently in an effective manner," and she was referred to the brain injury program. (AR 20.) Speech and occupational therapy, as well as a consult regarding balance issues, were recommended. (AR 20.) Remarkably, the Appeals Council considered this evidence, but determined it did "not relate to the period at issue" and therefore did "not affect the decision about whether you were disabled beginning on or before October 5, 2021." (AR 2.) Although Plaintiff failed to raise this issue in her opening brief, the Court is astonished that the Appeals Council made such a determination when the record explicitly states she was referred for psychological testing due to memory issues resulting from her aneurysm. *See Campbell v. Berryhill*, No. 4:17-CV-00263-CWD, 2018 WL 4515876, at *8 (D. Idaho Sept. 20, 2018) (finding new evidence clearly related to the period on or before the hearing decision, but that plaintiff failed to demonstrate there was a reasonable probability that the new evidence would have changed the outcome of the administrative hearing, if remanded by the Appeals Council and reconsidered by the ALJ) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

MEMORANDUM DECISION AND ORDER  - 17

Defendant's brief is devoid of responses to the issues raised by Plaintiff. Although Defendant contends that Plaintiff's subjective symptom testimony was inconsistent with the medical evidence, Defendant points to conditions, such as Plaintiff's hand pain and tremor, that are unrelated to Plaintiff's headaches, and her symptoms following her aneurysm in February of 2021. Nor does Defendant explain how normal reflexes, the ability to ambulate, and the ability to move one's extremities were somehow inconsistent with Plaintiff's cognitive impairments and aneurysm related symptoms. *See* Def.'s Brief at 4. (Dkt. 22.)

Defendant next contends that the ALJ reasonably relied upon evidence of symptom improvement. *Id.* at 5. *See Warre ex. Rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."). However, like the ALJ, the Defendant failed to sufficiently address the symptoms related to Plaintiff's headache frequency, and her symptoms of head pressure and cognitive impairment following treatment of Plaintiff's aneurysm in February of 2021. Def.'s Brief at 5.

Third, Defendant contends Plaintiff's limited approach to treatment undermined the alleged severity of her subjective symptom complaints. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). Here, Defendant points to Plaintiff's discontinuance of citalopram, her failure to follow up with

her neurologist concerning her rheumatologist's recommendation of Cymbalta, and her lack of mental health treatment. Def.'s brief at 6 – 7. However, all of these conditions and treatment modalities are entirely unrelated to the treatment of her headaches with Ajovy or the treatment of her cognitive impairments and other symptoms following her aneurysm in February of 2021.

Finally, Defendant contends Plaintiff's activities were inconsistent with the alleged severity of her complaints. *See See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (activities such as cooking, shopping, doing chores, caring for children, and playing games may contradict allegations of disability). Defendant points to records where Plaintiff reported stacking firewood, taking her daughters to school, and performing household chores. Def.'s brief at 7 – 9. However, in two written function reports, Plaintiff stated that, while she was able to do activities such as making simple meals, getting her daughters ready for school, or household chores, these activities were followed by prolonged periods of rest due to fatigue and pain. (AR 409 – 412, 432 – 442.) Accordingly, Plaintiff's activities do not shed much light on Plaintiff's ability to sustain the demands of full time employment without excessive absences or time off task due to migraines, cognitive impairments, and other symptoms, especially after February of 2021. *See* SSR 96-8p. (The ability to work includes the ability to do sustained work activities on a regular and continuing basis); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

**MEMORANDUM DECISION AND ORDER  - 19**

Nor did Defendant adequately address the evidence in the record that was consistent with Plaintiff's subjective complaints, and which the ALJ failed to mention – such as the frequency of Plaintiff's headaches despite treatment with Ajovy, and her allegations of cognitive impairment and head pressure following her aneurysm. These symptoms were supported by the medical records and were not inconsistent with Plaintiff's testimony. This evidence therefore supports Plaintiff's contention that the RFC did not sufficiently account for absences and time off task.

Accordingly, the Court finds the ALJ's RFC is not supported by substantial evidence, because the ALJ did not cite specific, clear and convincing examples following the disability onset date contrasting Plaintiff's symptom testimony with objective evidence in the record that undercut her testimony. The Court therefore finds the ALJ's reasons for discounting Plaintiff's testimony concerning the severity and limiting effects of her headaches, and her symptoms following her aneurysm in February of 2021, are not supported by substantial evidence in the record.

The Court concludes that this matter must be reversed and remanded for further evaluation of the medical evidence and Plaintiff's symptom testimony as it concerns her headaches, and her reported cognitive difficulties, in particular those after February of 2021. On remand, the ALJ must consider the evidence in the record related to these conditions in determining the RFC. She must also evaluate Plaintiff's ability to do sustained work activity on a regular and continuing basis without significant interruption from symptoms during the workday and workweek. SSR 96-8p.

**MEMORANDUM DECISION AND ORDER  - 20**

## CONCLUSION

For the reasons stated, the ALJ's decision will be reversed and remanded. In this case, the record does not conclusively show that Plaintiff is disabled, and therefore warrants further proceedings. The primary basis for reversal is the failure of the ALJ to consider certain evidence and to evaluate Plaintiff's symptom testimony related to the effects of her headaches, and her cognitive impairments and other symptoms following her aneurysm in February 2021. The appropriate remedy, therefore, is remand for further proceedings.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED that:**

1)      The decision of the Commissioner of Social Security is **REVERSED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **November 09, 2023**

Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 21**